J-A23007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                 :            PENNSYLVANIA

              v.                      :

CRAIG E. MOSS                 :

                                              :   No. 224 MDA 2022

APPEAL OF: TODD ROCK, FRANKLIN  :
COUNTY CLERK OF COURTS      :

Appeal from the Order Entered August 9, 2021
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0001036-1996

BEFORE: BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:           **FILED DECEMBER 13, 2022**

Todd Rock, the Franklin County Clerk of Courts ("Clerk of Courts"), appeals from the trial court order ("payment order") directing the Clerk of Courts to reimburse defendant Craig E. Moss ("Moss") for restitution Moss paid pursuant to the underlying 1996 arson case that was later vacated in part. We vacate the payment order and remand for proceedings consistent with this memorandum.

A brief recitation of the history surrounding the underlying arson case is necessary for understanding the context in which the payment order was issued. In 1996, Moss set fire to an apartment, which was located within a ten-unit apartment building owned by Lillian Stevens. The fire caused

---

[*] Former Justice specially assigned to the Superior Court.

extensive damage to the building, rendering some units uninhabitable. The Commonwealth charged Moss with multiple offenses related to setting the fire.

On January 13, 1997, Moss pled *nolo contendere* to one count of arson. The listed victims were Ms. Stevens and Robert Eyler. As part of the plea agreement, the Commonwealth *nolle prossed* the remaining fire-related charges. The Commonwealth also *nolle prossed* two counts of robbery and theft by unlawful taking, which had been filed on an unrelated docket based on a separate incident at a Best Western hotel that was located in Waynesboro, Pennsylvania ("Best Western"). The trial court sentenced Moss to forty-two to 240 months of incarceration and ordered Moss to pay restitution as follows: $10,500 to Ms. Stevens; $4,305 to Mr. Eyler; $66,730.51 to Penn National Insurance;[1] and $423.50 to Best Western. On direct appeal, this Court affirmed Moss's judgment of sentence. *See Commonwealth v. Moss*, 706 A.2d 1256 (Pa.Super. 1997) (unpublished memorandum). Thereafter, Moss filed six petitions pursuant to the Post Conviction Relief Act, none of which garnered him relief.

Throughout those proceedings, Moss made payments towards his restitution obligations, which resulted in satisfaction of the amounts owed to Mr. Eyler and Best Western. We observe that the specific procedure surrounding his payments is unclear. The certified record reveals that the amount of restitution was "determined to be due and payable by the Franklin

---

[1] Penn National Insurance had insured the building and paid that amount to Ms. Stevens in claims following the fire.

County Probation Department [("Probation Department")]."  Order of Court, 3/5/97.  The record does not, however, indicate to which entity Moss sent his restitution payments or how those funds were distributed to the respective victims.  Nonetheless, at the time Moss committed the underlying arson, the statute governing restitution provided as follows in terms of payment procedures:

> (e) Restitution payments and records.--Restitution, when ordered by a judge, shall be made by the offender to the probation section of the county in which he was convicted according to the order of the court or, when ordered by a district justice, shall be made to the district justice.
>
> The probation section and the district justice shall maintain records of the restitution order and its satisfaction and shall forward to the victim the property or payments made pursuant to the restitution order.

18 Pa.C.S. § 1106.[2]  This subsection was later amended to permit designation of another agent to collect restitution.

Based on this statutory scheme and the restitution order, the Probation Department would have been responsible for disbursing funds received to the respective victims.  Since "restitution to more than one person [wa]s set at the same time," the Probation Department would have had to apply the statutory priority scheme to first apply those payments to the victims and then to the insurance company.  18 Pa.C.S. § 1106(c)(1)(ii).  It is unclear from the

---

[2] Throughout this memorandum, we refer to the version of 18 Pa.C.S. § 1106 that was in effect at the time of Appellant's crime and original sentencing.  *See* 18 Pa.C.S. § 1106 (effective 7/2/95 to 12/3/98).

record what precise role, if any, the Clerk of Courts held or played regarding Moss's restitution obligations in the above-captioned case.[3]

In 2017, Moss filed a motion to vacate his sentence, which the trial court ultimately denied. On appeal to this Court, we vacated Moss's judgment of sentence in part and remanded for resentencing on the issue of restitution. Specifically, this Court found that the trial court improperly deferred to the Probation Department the determination of the amount of restitution to be paid by Moss. On remand, we directed the trial court to "determine the amount of loss or damage caused, how it should be paid, and whether the amounts the victims were compensated by insurance were properly excluded from the restitution." *Commonwealth v. Moss*, 226 A.3d 611 (Pa.Super. 2020) (non-precedential decision at 10) (cleaned up). Additionally, this Court *sua sponte* found that since the Commonwealth *nolle prossed* the charges forming the basis for the damages to Best Western, Moss was not criminally responsible for those damages. Therefore, we directed the court not to reimpose the restitution award as to Best Western.

The trial court held a restitution hearing on June 4, 2020. Moss sought to make a statement to the court, which the court denied. Of relevance to this appeal, the Commonwealth did not present any evidence as to the losses

---

[3] According to the Clerk of Courts, its role "should be purely administrative (*i.e.*, acting as an intermediary in delivering funds to parties)." Clerk of Courts' brief at 18. The Clerk of Courts asks us to "take judicial notice of the fact that the Commonwealth itself administers funds collected by the Office of the Clerk of Courts and directs how and to whom such funds are disbursed." *Id*. at 29. However, we are not a fact-finding court.

sustained by Mr. Eyler. Thus, the court did not reimpose the restitution award as to Mr. Eyler and, pursuant to this Court's directive, also did not reimpose the award as to Best Western. Noting that Moss had already made restitution payments towards those previously-imposed awards, the court directed Moss to file a motion as to the manner in which those payments should be returned to Moss or applied to his outstanding restitution obligations. Moss appealed, and this Court vacated his judgment of sentence and remanded for resentencing because the court erred in denying Moss the opportunity to address the court at his resentencing.[4] *See Commonwealth v. Moss*, 255 A.3d 1270 (Pa.Super. 2021) (non-precedential decision).

On July 12, 2021, the trial court held the most recent resentencing hearing in this matter. Pursuant to this Court's remand, it permitted Moss to address the court. At the end of the hearing, the court re-imposed restitution as to Ms. Stevens and Penn National Insurance. *See* Order of Court, 7/12/21. As to the matter at issue, it did not reimpose the restitution awards to Mr. Eyler and Best Western. The court indicated that it was unsure how to accomplish repayment for the restitution payments that had been applied to those vacated restitution awards. Therefore, the court included within the July 12, 2021 restitution order a provision permitting Moss the opportunity to

---

[4] During the pendency of that appeal, the trial court conducted a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). After concluding that Moss knowingly and intelligently waived his right to counsel, the court permitted counsel to withdraw. *See Commonwealth v. Moss*, 255 A.3d 1270 (Pa.Super. 2021) (non-precedential decision at 6 n.8). Moss has since proceeded *pro se*.

- 5 -

file a memorandum of law setting forth relevant precedent and a proposed procedure for repayment.

Moss filed a memorandum but did not propose a mechanism for repayment. The Commonwealth did not file a brief or propose any mechanism for repayment. After considering this Court's prior decisions, the trial court concluded that "it would be a manifest injustice to order [Mr.] Eyler and Best Western to repay money that had been erroneously paid to them many years ago by no fault of their own." Order, 8/9/21, at ¶ 7. Therefore, it issued the payment order, which directed the Clerk of Courts to issue a check to Moss in the amount of $4,728.50 for repayment of the restitution erroneously awarded and paid to Mr. Eyler and Best Western. ***See id***. at 2 (unnumbered).

Several filings occurred following the issuance of the payment order. Of relevance to this appeal, the trial court *sua* sponte scheduled a hearing related to the payment order via an order dated August 16, 2021. Before that order was filed, however, Moss *pro se* filed a notice of appeal from the July 12, 2021 restitution order. Therefore, the court cancelled the scheduled hearing and stayed the payment order pending resolution of Moss's appeal.

The Clerk of Courts filed a motion for reconsideration of the payment order, noting that the court had imposed liability on the Clerk of Courts personally. Accordingly, the trial court issued an amended payment order naming the Office of the Clerk of Courts as the entity responsible for payment, not the Clerk of Courts in his individual capacity. Thereafter, the Office of the Clerk of Courts filed another motion for reconsideration, claiming that it was

denied due process when it was not given the opportunity to be heard prior to the issuance of the payment order. *See* Motion for Reconsideration, 8/24/21. On September 2, 2021, the trial court directed that the motion be returned without further action. Within the order, the court noted that it had stayed all proceedings pending resolution of Moss's appeal. The court stated that once that appeal was resolved, it would conduct a hearing to allow all concerned Franklin County agencies to present argument regarding the procedure for repayment to Moss of the erroneously-paid restitution sums.

That same day, the Clerk of Courts filed a notice of appeal to the Commonwealth Court from the payment order and a concise statement of matters complained of on appeal. The trial court filed a responsive Rule 1925(a) opinion.[5] Upon belief that this matter related to Moss's criminal resentencing and the return of restitution in connection thereto, the Commonwealth Court transferred this matter to our Court. *See* 42 Pa.C.S. § 705.

The Clerk of Courts presents the following issues for our review:

I. Whether the trial court abused its discretion and/or committed an error of law when it ordered that the Office of the Clerk of Courts for Franklin County was responsible for the return of an improper restitution payment made by [Moss] where the payment had previously been transmitted to a third party.

II. Whether the trial court's order directing the Office of the Clerk of Courts to return [Moss's] improperly paid restitution

---

[5] Although the trial court urges this Court to quash the appeal on several grounds, we find quashal unwarranted.

> violated the due process rights of the Office of the Clerk of Courts where the Office of the Clerk of Courts does not possess the funds at issue.

Clerk of Courts' brief at 6.

The Clerk of Courts challenges the authority of the trial court to issue the payment order, which directed the Clerk of Courts to pay a sum of money to Moss to compensate for the payments he previously made towards the vacated restitution awards. In other words, the Clerk of Courts challenges the subject matter jurisdiction of the trial court with regard to the payment order. *See Harley v. HealthSpark Found.*, 265 A.3d 674, 687 (Pa.Super. 2021) (defining subject matter jurisdiction as "the power of the court to hear cases of the class to which the case before the court belongs, that is, to enter into inquiry, whether or not the court may ultimately grant the relief requested" (citation omitted)). It is well-settled that "[m]atters involving the subject matter jurisdiction of the courts of common pleas are questions of law, and, as such, our standard of review is *de novo* and our scope of review is plenary." *Id*.; *see also Com., Dep't of Env't Prot. v. Cromwell Twp., Huntingdon Cnty.*, 32 A.3d 639, 646 (Pa. 2011) (noting that a challenge to subject matter jurisdiction "may be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*") (citation omitted)).

The trial court had the authority to issue the July 12, 2021 restitution order, which reimposed some of the original restitution awards but did not reimpose those awards that were unsupported by evidence or not the result of Moss's criminal conduct. *See* 18 Pa.C.S. § 1106; *see also*

*Commonwealth v. Weir*, 201 A.3d 163, 170 (Pa.Super. 2018) ("[T]he sentencing court is statutorily required to impose restitution under § 1106(a) when the Commonwealth has established that the defendant committed a crime, the victim suffered injury to person or property, and there exists a direct causal nexus between the crime of which defendant was convicted and the loss or damage suffered by the victim." (citations omitted)).

Mandatory restitution is governed by 18 Pa.C.S. § 1106(c), which provides as follows:

> (c) Mandatory restitution.--
>
> > (1) The court shall order full restitution:
> >
> > > (i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.
> > >
> > > (ii) If restitution to more than one person is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:
> > >
> > > > (A) The victim.

(B) The Crime Victim's Compensation Board.

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(2) In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim and such other matters as it deems appropriate.

(ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just, provided that the period of time during which the offender is ordered to make restitution shall not exceed the maximum term of imprisonment to which the offender could have been sentenced for the crime of which he was convicted.
(iii) May at any time alter or amend any order of restitution made pursuant to this section providing, however, that the court state its reasons and conclusions as a matter of record for any change or amendment to any previous order.

(iv) Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.

(v) Shall consider any other preexisting orders imposed on the defendant, including, but not limited to, orders imposed under this title or any other title.

18 Pa.C.S. § 1106.

The restitution statute is silent with regard to the situation at hand, *i.e.*,

where a defendant has made payments towards restitution awards that were

subsequently vacated. It is undisputed that Moss is entitled to attempt to recover the payments he made towards the vacated restitution awards. What is at issue is **how** the trial court ordered repayment and, specifically, whether the trial court erred in ordering the Clerk of Courts to pay Moss. Our review has pinpointed two cases from this Court that provide guidance with respect to the potential mechanisms for such repayments: ***Commonwealth v. Wozniakowski***, 860 A.2d 539, 546 (Pa.Super. 2004), and ***Commonwealth v. Langston***, 904 A.2d 917, 925 (Pa.Super. 2006), *abrogated on other grounds by* ***Commonwealth v. Holmes***, 155 A.3d 69 (Pa.Super. 2017).

In ***Wozniakowski***, this Court vacated two restitution orders. We vacated the original open-ended restitution order, as well as an amended restitution order, which was primarily for future medical expenses, because the trial court lacked jurisdiction to amend the order upon motion by the Commonwealth after Wozniakowski had already served her sentence in its entirety. At the time of the appeal, the victim had received restitution payments pursuant to the original restitution order. This Court held that the victim was obligated to repay the defendant based on the following analysis:

> Because [the] open-ended order of restitution was illegal . . ., any restitution monies paid to victim must be returned to the [defendant]. While this may not be an equitable decision, it is in compliance with the law and victim was free to seek redress in civil court. We remand so as to allow the trial court the opportunity to direct such repayment.

***Wozniakowski***, ***supra*** at 546 (cleaned up).

- 11 -

In **Langston**, this Court vacated an award of restitution since the listed individual was not a victim of the crimes as defined by the Crimes Code and Sentencing Code. At the time this Court vacated the restitution order, the restitution payments had not yet been disbursed to the victim. Rather, the clerk of courts was holding the funds as part of the Crime Victims Compensation Fund. Thus, this Court held that the defendant was "entitled to the return of whatever monies she ha[d] turned over to the clerk of courts' office pursuant to the amended . . . restitution order" and we "remand[ed] for the lower court to determine what that amount [was] and how it may be refunded to [the defendant]." **Langston**, **supra** at 925.

The trial court in the case *sub judice* found **Wozniakowski** inapplicable, distinguishing it as follows:

> First, in **Wozniakowski**, the case was not nearly twenty-five years old, and the restitution had not been paid in full many years before the order was vacated. Second, unlike in **Wozniakowski**, [Mr.] Eyler and Best Western are unable to seek redress for their damages in civil court, as the statute of limitations has no doubt long passed. Lastly, in **Wozniakowski**, the damages in question related partially to future dental work and were not damages that the victim had actually incurred, whereas [Mr.] Eyler and Best Western both incurred tangible damage to their property.

Order, 9/2/21, at ¶ 6. Instead, relying on **Langston**, the trial court concluded that it had discretion to decide how the payments would be refunded. In exercising that discretion, the court directed the Clerk of Courts to pay Moss

because it was "the agency to which [Moss] had supplied the money to be repaid."[6]  Trial Court Opinion, 11/24/21, at 13.

Upon review, we conclude the trial court's analysis was in error.  Unlike in **Langston**, the Clerk of Courts in the case *sub judice* was not in possession of the restitution funds at the time the trial court ordered the Clerk of Courts to pay Moss.  Stated simply, the trial court did not have the authority to order the Clerk of Courts to return funds that it did not possess.  Despite the trial court's attempts to distinguish **Wozniakowski**, we find our analysis therein controlling.  As in **Wozniakowski**, Mr. Eyler and Best Western actually received the sums awarded to them.  Since those restitution awards were subsequently vacated, "any restitution monies paid to [the] victims[s] must be returned to [Moss]."  **Wozniakowski**, **supra** at 546.  Accordingly, as we did in **Wozniakowski**, "[w]e remand so as to allow the trial court the opportunity to direct such repayment."[7]  **Id**.

---

[6]  There is no record support for this assertion.  We reiterate that we do not know, based on the record before us, how Moss made his restitution payments or which entity disbursed those funds to the designated recipients.

[7]  We recognize the trial court's concern that "[Mr.] Eyler is deceased and Best Western . . . is defunct."  Trial Court Opinion, 11/24/21, at 13.  However, as the Clerk of Courts aptly observes, "administrative difficulties cannot serve as pretext to redefine the intended legal scope and function of a restitution relationship.  Doing so would dangerously implicate purely administrative parties, like the Office of the Clerk of Courts, to be held accountable for previous restitution order errors."  Clerk of Courts' brief at 14.  Whether or not Moss will be able to successfully recover any of the funds he paid towards those restitution awards is not dispositive of the question before this Court.

- 13 -

Based on the foregoing, we vacate the payment order and remand for proceedings consistent with this memorandum.[8]

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2022

---

[8]  Since we reverse as to the Clerk of Courts' first issue, we do not reach its second issue on appeal.